CASE 24.—ACTION BETWEEN J. S. GATLIFF AND OTHERS
    AGAINST WILLIAM INMAN AND OTHERS TO SELL
    A SCHOOL HOUSE AND REBUILD A NEW ONE.—
    January 7.

## Gatliff, &c., v, Inman, &c.

Appeal from Whitley Circuit Court.

John W. Tuttle, Special Judge.

From the judgment Gatliff and others appeal.—
Affirmed.

1.  Schools and School Districts—Property—Sale—Powers of Trus-
    tees.—Under Ky. St. 1903, section 4439, authorizing school
    district trustees to sell old schoolhouse sites, and use the
    proceeds toward procuring new sites, when real estate owned
    by a district is not needed as a school site, the trustees may
    sell it, and, if the proceeds are needed toward the purchase
    of a new site, they should be so applied, and, if not so
    needed, they may be applied to any legitimate needs of the
    district for school purposes.
2.  Same—Property—Sale—Method.—Under Ky. St. 1903, section
    4439, authorizing school trustees to sell district property,
    they may sell either publicly or privately, and their action
    is final in the absence of a showing of corruption or fraud.
3.  Same—Sale at Auction—Rights of Bidders.—A bidder at a
    sale of school property, having failed to previously investi-
    gate the trustees' right to sell, and having been given a
    reasonable time within which to comply with the terms of
    sale after his bid was accepted, cannot complain of a resale
    on his failure to so comply, nor of the trustees' refusal to
    consider his bid at the resale.
4.  Same—Property—Sale—Duty of Trustees.—In selling school
    district property, the trustees were not bound to recognize
    the bid of one whom they knew to be unable to pay nor a
    bid known to them not to be made in good faith, but with
    intent to defeat a sale, but a mere doubt whether the high

bidder was acting in good faith would not authorize rejection; the proper course being to accept each high bid in turn, and to give the bidder reasonable opportunity to comply with the terms of the sale.

5. Same—Power of Trustees.—In receiving bids for part of a schoolhouse site, the district trustees could consider the use to which that part would be put by the buyer, and could refuse to sell to one who would use it to the injury of the health, morals, or best interests of the school children.

SHARP & STEPHENS for appellants.

W. R. HENRY and H. H. TYE for appellees.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

Common school district No. 1 of Williamsburg, Whitley county, Ky., owned a certain house and lot of ground in Williamsburg. The house for some time had not been used for school purposes, and had been permitted to become very much in need of repairs. It had been condemned by the superintendent of common schools of Whitley county as unfit for school purposes, and the location of the building upon the lot had been declared an unsuitable location for a school building. The trustees of the district determined to sell the portion of the lot abutting upon the main street, and use the proceeds arising from the sale toward removing and repairing the building. It was agreed at a meeting of the trustees that a portion of the lot fronting on Main street should be sold at public auction, on a credit of six months, and the purchaser at such sale should be required to remove the building to the rear end of the lot. The lot was accordingly advertised, and, when offered for sale, one H. F. Finley bid $625 for it. After the lot was sold to him, he declined to execute bond until after he had an

opportunity to examine the title, and satisfy himself that the trustees had a right to sell same. The trustees waited perhaps an hour and a half, and demanded that the bond be executed, and, the purchaser failing within 30 minutes thereafter to execute the bond, the property was again offered for sale, whereupon the said Finley again bid the sum of $625, and others present offered approximately the same amount, all of which bids were refused by the trustees conducting the sale, and the lot was declared sold to one William Walden for $250, he to remove the school building from the lot so sold. Much proof was taken to show that, by dividing the lot and selling a part thereof, the portion remaining was not sufficiently large to furnish suitable accommodations for the school children, some 300 or more, in that school district, but, inasmuch as the remainder of the lot has been sold by the trustees, a consideration of that branch of the litigation is unnecessary. Another site for the school building, suitable for the necessities of the district, has no doubt already been selected and secured by the trustees, and the only questions left open for determination are the right of the trustees to make a sale of a portion of the property; and, second. if they had this right, the validity of the sale to William Walden in the manner in which it was made.

For appellants it is urged that the trustees of a common school have no right whatever to sell real estate belonging to the district, except for the purpose of providing the means to purchase a new site after the old site had been condemned, or found to be inadequate or unsuited to the wants and necessities of the district; while for appellees it is insisted that the title to the real estate of a district is vested in the trustees, and that they have a large discretion in

the disposition thereof, and that this discretion is not restricted either as to the purpose for which it may be sold or the manner in which the selling is to be conducted, after it is determined that it shall be sold.

So much of section 4439, Ky. Stats., 1903, as is applicable to the question in issue, provides that: "They (the trustees) may change the location of the school house, sell or dispose of the old site, and use the proceeds thereof toward procuring a new one." It will be observed that this section is not mandatory, but gives to the trustees a large discretion. They may sell and dispose of the old site, and they may use the proceeds toward the purchase of a new site. Clearly it does not mean to deny to trustees the right to sell any real estate which the district might own, unless such sale is necessary to enable them to purchase a new site. The new site might be donated, in which event no money would be needed for the purchase thereof, and yet it could hardly be successfully contended that the district must be denied the right to sell the old site simply because the money, which might be realized from a sale thereof, was not needed toward the purchase of a new site. A fair and reasonable construction should be placed upon this statute, and we are of opinion that, when real estate owned by the district·is not needed as a school site, the trustees of such district may sell same, and, if the money is needed toward the purchase of a new site, it should be so applied, and, if not, then it may be applied to any legitimate needs of the district for school purposes. The trustees are presumed to act for the best interests of the district. They may sell either publicly or privately; and, when they act, their action is final. Unless it is shown that they have acted corruptly or fraudulently in the sale of the real estate.

their action is not subject to review.  The explanation offered by the bidder F. H. Finley as to why he did not execute the bond when the sale was made to him is far from satisfactory.  He knew that the property was to be sold, and, if he contemplated becoming a bidder at said sale, he should have investigated the questions in advance of the sale for which he sought delay after he had been declared the successful bidder. Having failed to do so, and having been given a reasonable time within which to comply with the terms of the sale after he was declared the purchaser, he may not complain that the trustees again offered it for sale.  Nor is he in a position to complain because they refused to recognize his bid when the property was offered the second time; for, having failed and refused to comply with the terms of the sale within a reasonable time after it had once been knocked off to him, they were justified in the conclusion that he was not bidding in good faith, hence were warranted in refusing to accept his bid.  No such reason, however, could be assigned for the refusal of the trustees to accept the bid of others who offered practically the same amount, and the explanation of the trustees for such refusal on their part is not altogether satisfactory.  It is the contention of the trustees that they did not believe that the others who bid practically the same as Finley were acting in good faith.

It appears that certain of the residents of the town and district were opposed to a sale of the property at all, and were doing what they could to prevent a sale, whereas others were in favor of it.  Those who were opposed to the sale were among the highest bidders for the property, and the testimony which they offered goes to show that it was reasonably worth the amount which they bid for it; while, on the other hand, the

testimony offered by the trustees is in the main to the effect that the property was not worth more than they actually received for it, to-wit, $250, and the cost of removing the building. As above stated, the trustees are supposed to act for the best interests of the district. They would not be required to approve a sale to a bidder whom they knew was unable to pay for the property, nor would they be required to recognize a bid for the property if they knew that it was not made with the intention of receiving and paying for the property, but only for the purpose of thwarting their plans and preventing the sale from being made. On the other hand, they should not let mere suspicion and doubt cause them to reject a good bid and accept one for a less price merely because they were of opinion that the high bidder was not acting in good faith. The proper course for them to have pursued in the case at bar would have been to accept each high bid in turn, and give the bidder a reasonable time and opportunity to comply with the terms of the sale, and when each had in turn failed, if they did fail, then and only then should they have accepted the bid of $250. It appears, however, from their testimony that they were acting in good faith, and there is no charge of corrupt or fraudulent conduct on their part in conducting the sale, although it is made strongly to appear that they were anxious that the property should be purchased as a site for the Second Baptist Church of Williamsburg. After its purchase by William Walden, he transferred his bid to the Baptist Church, and the deed was by the trustees made to the trustees of the church, and, although some considerable time was consumed in the completion of this sale, none of the would-be purchasers took any steps whatever to prevent its being carried out, and their action in thus delaying

matters for some time, and until the sale had been completed and the transfer made, rather justifies the conclusion of the trustees that they were not acting in good faith. Again, in the exercise of their discretion, the trustees would have the right to prefer that the property which they were selling should be used for church purposes rather than for something else, if the remainder of the property was to be continued as a site for school purposes. At the time this sale in question was made, as evidenced by the school record, it was the intention of the trustees to repair the school building when removed, and have the public school for that district conducted there. The presence of a church near a school house and grounds we apprehend could not in any state of case be objectionable, but many other buildings might be and many uses to which the ground might be put would be very objectionable, and the trustees of the school would be warranted in refusing to sell the ground to one who would use it for the conduct of a business that would be injurious to the health or morals or best interests of the school children, so that the use to which the ground is to be put is a proper element for the consideration of the trustees in the conduct of the sale. They knew what it was to be used for if bought by the church people, and, knowing the other bidders to be opposed to its sale and entertaining views hostile to theirs, we are not prepared to say that they acted against the best interests of the school in refusing to accept the bid of those whom they did not believe to be acting in good faith, and in making the sale, as they did, to the agent for the trustees of the church.

The proof shows that the trustees of the school were not members, much less officials, of the Second Baptist Church of Williamsburg. There is no evidence of bad faith or fraud on the part of the trustees or

collusion with Walden, the purchaser. The trustees had the right to sell, and, having concluded the sale and the property having passed into the hands of the church and been appropriated to its use, we are of opinion that the sale should not be disturbed, and, the lower court having so held, its judgment is affirmed.